IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LAURA A. MARTIN,

    Plaintiff,

vs.

    Civil Action 2:15-cv-2533
    JUDGE ALGENON L. MARBLEY
    Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## OPINION & ORDER

Plaintiff, Laura A. Martin, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits, widow's insurance benefits, and supplemental security income. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 23), Plaintiff's Reply (ECF No. 24), and the administrative record (ECF No. 8). For the reasons that follow, the Court **REVERSES** the Commissioner of Social Security's nondisability finding and **REMANDS** this case to the Commissioner and the Administrative Law Judge ("ALJ") under Sentence Four of § 405(g).

### I.    BACKGROUND

Plaintiff protectively filed her applications for benefits on April 23, 2012, alleging that she has been disabled since December 11, 2011, due to fibromyalgia, possible rheumatoid arthritis, depression, and anxiety. (R. at 214-20, 221-26, 277, 296.) Plaintiff's applications were

denied both initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. Plaintiff then filed her application for widow's insurance benefits in September 2013, which was escalated to the hearing level. (R. at 264-72.) Administrative Law Judge Janice M. Bruning held a video hearing on September 25, 2013, at which Plaintiff, represented by counsel, appeared and testified. (R. at 87-99.) Lee Knutson, a vocational expert, also appeared and testified at the hearing. (R. at 99–105.) On March 21, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 64-83.) On May 5, 2015, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified at the administrative hearing that she lives in a trailer with her daughter. (R. at 88.) Plaintiff has not worked a job longer than four months since December 11, 2011. (R. at 89.) Plaintiff testified that she had low self-esteem, difficulty thinking, and memory loss about the day her husband passed away and weeks following his death. (*Id.*) She testified that she cries "[s]everal times a day." (*Id.*) Plaintiff testified that she has paranoia because she has to take care of her daughter and grandchild, and felt like she had to be the head of household. (R. at 90.) Plaintiff reported she had daily panic attacks. (*Id.*) She had been on medication for about one and a half months at the time of the hearing and had no side effects "yet." (R. at 90-91.) Plaintiff testified that she saw a grief counselor twice a month. (R. at 98.)

Plaintiff estimated she could not walk more than 15-20 feet before her hips hurt. (R. at 91.) She noted her hips hurt "all the time." (*Id.*) Plaintiff testified that she has fibromyalgia for which she takes medication. She indicated that she tries to walk for exercise. (*Id.*) She estimated she could stand 30 minutes and sit for 15-30 minutes. (*Id.*) She can carry a gallon of milk. (R. at 92.) Plaintiff acknowledged having difficulty bending, stooping, crouching, crawling, and kneeling and indicated that her daughter assisted her with these activities. (*Id.*) She testified that she uses a walking stick daily. (*Id.*) She had difficulty using her right hand. (*Id.*) She usually tossed and turned all night long, and eventually got up to sleep in a recliner. (R. at 93.)

Plaintiff stated that she drives. When questioned about how often, she replied that she drove 8 miles to the grocery store but had spasms lifting her leg for the brake and gas pedals. (R. at 93.) Plaintiff had help from her daughter for household chores, and she needed help pulling certain shirts over her head. (*Id.*) Her daughter also helped Plaintiff get out of the tub. (*Id.*) Plaintiff could prepare food, clean the dishes "[i]n sessions," and do laundry (if her daughter carries the basket), make her bed, and dust. (R. at 94.) Sweeping and vacuuming bothered her. (*Id.*) Plaintiff hosted Bible studies at her house and watched television. (R. at 95.) She cared for finches and used a cellphone to text. (R. at 95-96.)

**B. Vocational Expert Testimony**

Plaintiff has previously worked as a groundskeeper and nurse's aide. (R. at 100.)

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the vocational expert ("VE"). (R. at 101-02.) Based on Plaintiff's age, education, work experience and the RFC ultimately determined by the ALJ, the VE testified that

3

the hypothetical individual could perform approximately 745,000 light exertion, unskilled jobs in the national economy such as an assembler; product inspector, checker, and weigher; and hand packager. (*Id.*)

### III. MEDICAL RECORDS

**A. Physical Impairments**

**1. Stacy Walter, M.D.**

Plaintiff began treating with primary care physician, Dr. Walter, in February 2010. (R. at 360.) Plaintiff had been diagnosed with fibromyalgia in March 2010. (*Id.*) The first progress note, in December 2010, shows that Plaintiff saw Dr. Walter for medication refills. She complained of joint pain and said her medication was "working great for joints and swelling." (R. at 369.) Dr. Walter assessed arthralgia and hypertension and continued the medications, Prednisone and Vicodin. (*Id.*)

On February 25, 2011, Plaintiff saw Dr. Walter for polyarthralgia and hypertension. Dr. Walter found some wrist and MCP (metacarpophalangeal) joint swelling on examination. Dr. Walter continued Plaintiff's current medications. (R. at 368.)

In May 2011, Plaintiff was seen for a re-check and medication refill. She reported that her work as a nurse's aid was getting harder. On examination, Dr. Walter noted that she was moving gingerly and had muscle spasms in the bilateral lumbar paravertebral musculature. Dr. Walter recommended that Plaintiff resume Savella for the fibromyalgia and continue on Vicodin, and she also prescribed Flexeril. (R. at 367.)

4

On July 18, 2011, Plaintiff reported her fibromyalgia was doing "very well" with Savella. Her examination showed diffuse muscle tenderness. (*Id.*) Dr. Walter continued Plaintiff on the same medications. (R. at 366.)

In August 2011, Plaintiff saw Dr. Walter to discuss pain and narcotics, fibromyalgia, and insomnia. Dr. Walter noted that Plaintiff had missed her pill count the month prior and had two previous discrepancies. Dr. Walter, therefore, cancelled her refill of narcotic pain medication. On examination, Dr. Walter found some synovial thickening of the MCP joints.

When seen on March 21, 2012, Plaintiff complained of right shoulder pain, fibromyalgia, and gastroesophageal reflux disease (GERD). She reported that she had just returned from spending two months in Florida with her elderly parents. She also reported that the medication for her acid reflux had "worked wonders." On examination, Dr. Walter found tenderness to palpitation for Plaintiff's right shoulder, a pain response with shoulder abduction and internal rotation. Dr. Walter noted no definite weakness. Dr. Walter assessed shoulder pain, fibromyalgia syndrome, arthralgias NOS, and GERD. She was to continue taking Savella for her fibromyalgia and was given samples of Celebrex; she was also prescribed cortisone injections. (R. at 364.)

In May 2012, Plaintiff wanted to "to discuss disability" and she complained of right shoulder pain and back pain. She told Dr. Walters that she was applying for disability benefits because she felt she was unable to perform her cashier job at the nursing home. On physical examination, Dr. Walters noted Plaintiff appeared well and had a normal affect. Dr. Walters found diffuse tenderness in her back and decreased range of motion on abduction of her right shoulder. Dr. Walter assessed back pain and shoulder pain and ordered a trial of cortisone for

5

her right shoulder. Dr. Walter noted: "I do not encourage pursing disability—would prefer focus on therapies and diagnoses." (R. at 363.)

On June 6, 2012, Dr. Walter completed a form on behalf of the state agency in which she noted that Plaintiff exhibited low back tenderness, decreased range of motion, and multiple fibromyalgia tender points. Dr. Walter also reported that Plaintiff's pain seemed to vary, that she had decreased range of shoulder abduction on the right side, and that her gait was "ok." (R. at 357-58.)

On June 26, 2012, Plaintiff presented with disability forms to be completed. (R. at 362.) Dr. Walters ordered new lab tests related to fibromyalgia, noting that Plaintiff had not had any lab tests for two years with escalating symptoms warranting repeat testing. Dr. Walter assessed right shoulder pain with a note of "cortisone anytime," and depression, for which Plaintiff had agreed to see a licensed social worker. (R. at 362.)

On August 30, 2012, Dr. Walter completed another form on behalf of the state agency. (R. at 359-61.) Dr. Walter indicated that the effectiveness of Plaintiff's medications was "fair." (R. at 361.) She noted Plaintiff's issues with compliance as "frequent 'no shows'" (*Id.*) Dr. Walker did not describe Plaintiff's work-related functional limitations, simply noting, "see chart notes." (*Id.*)

Plaintiff did not return to see Dr. Walter until March 4, 2013 for follow-up for fibromyalgia and depression. At the time, she was on no medication. Plaintiff told Dr. Walter that she had not come in due to insurance issues. Based on her depression scale, Plaintiff was found to be severely depressed. On examination, Dr. Walter found diffuse muscle tenderness

6

with spasm. Dr. Walter prescribed Cymbalta for both fibromyalgia and depression. (R. at 380-81.)

Dr. Walter completed a Physical Capacity Evaluation form in May 2013, in which she noted Plaintiff suffered from fibromyalgia and depression, and opined Plaintiff's depression "is probably the more limiting of the two conditions." (R. at 384.) Although she emphasized that her findings were "all estimates," Dr. Walter determined that Plaintiff's maximum ability to lift and carry was 5 pounds frequently and 10 pounds occasionally. Plaintiff can stand and walk for four hours during an eight-hour workday and sit for four hours during an eight-hour workday and occasionally twist, stoop, bend, climb stairs, climb ladders; could never crouch. (R. at 385.) Dr. Walter also opined that Plaintiff would have no trouble understanding, remembering or carrying-out simple instructions, could make simple work-related decisions, could respond appropriately to supervisors and co-workers, and could deal with changes in a routine work setting "[u]nless depression were to manifest this way." (R. at 386.) Dr. Walter felt Plaintiff could perform these work related functions on less than a full time basis. Dr. Walter concluded that Plaintiff's fibromyalgia contributes to difficulty with most manual tasks. (*Id.*)

On June 17, 2013, Plaintiff saw Dr. Walter for a check-up and medication refills. Plaintiff reported that she was "[n]ot doing well, physically or emotionally." She reported that her husband died in April and that she had performed CPR on him no avail. (R. at 391.) She is "[h]urting all over." (R. at 391.) On examination, Plaintiff's physical examination showed a mildly depressed affect, and mild MCP joint swelling. Dr. Walter assessed hypertension, fibromyalgia, depression, grief, arthralgia, insomnia, and tinea corporis. Dr. Walter prescribed medication and noted Plaintiff also had an appointment with a social worker. (R. at 392.)

In Dr. Walter's last treatment note presented before the ALJ, dated in November 2013, Dr. Walter continued to assess fibromyalgia, hypertension, depression, and fatigue and continued Plaintiff's medication. (R. at 403-08.)

### 2. State Agency Evaluations

On July 4, 2012, state agency physician, Gary Hinzman, M.D., reviewed the record and assessed Plaintiff's physical functioning capacity. (R. at 106-11.) Dr. Hinzman opined that Plaintiff could frequently lift up to 10 pounds, and occasionally lift 20 pounds; stand, walk and/or sit for about 6 hours in an 8-hour workday. (R. at 109-10.) Dr. Hinzman found that Plaintiff would be limited in pushing and pulling, with no overhead reaching, in both her upper extremities due to decreased range of motion. (R. at 110.) Dr. Hinzman also opined that Plaintiff could never climb ladders/rope/scaffolds but occasionally balance, kneel, crouch, crawl, and climb ramps and stairs. (*Id.*) Dr. Hinzman found Plaintiff partially credible, noting that her treating source did not recommend applying for disability but recommended therapy. (R. at 109.) On October 8, 2012, state agency physician, Eli Perencevich, D.O., reviewed the record upon reconsideration and essentially affirmed Dr. Perencevich's assessment. (R. at 130-32.)

### B. Mental Impairments

#### 1. Gary S. Sarver, Ph. D.

Plaintiff was examined by consulting psychologist, Dr. Sarver, for disability purposes on on September 24, 2012. (R. at 370-77.) Plaintiff reported that she cannot work because "I can't move because of the pain." (R. at 370.) Dr. Sarver noted Plaintiff was alert and oriented, and he found Plaintiff cooperative with no evidence of a thought disorder. Plaintiff's eye contact was good. Plaintiff presented with a constricted affect, a subdued mood, below average abstract

8

reasoning, below average common sense/judgment, and poor insight with little understanding of intrapsychic dynamics or the emotional complexities of interpersonal relationships. (R. at 374.) Dr. Sarver diagnosed an adjustment disorder with mixed anxiety and depressed mood, undifferentiated somatoform disorder, and personality disorder (not otherwise specified). (R. at 375.) Dr. Sarver assigned a Global Assessment of Functioning (GAF) score of 55, indicating that she is moderately impaired. (R. at 376.) Dr. Sarver opined that Plaintiff would likely have difficulty organizing, structuring, and working towards goals. She is likely to have difficulty containing her anger, managing her frustration, and controlling her impulses. He indicated that Plaintiff's personality disorder is predictive of intense and unstable interpersonal relationships and she would likely eventually encounter contentious relationships with coworkers and supervisors in the work setting. (*Id.*) Dr. Sarver determined that Plaintiff had a below average level of intellectual functioning. (R. at 376.) She would have difficulty understanding, remembering, or carrying out simple job instructions. (*Id.*) Dr. Sarver also determined that Plaintiff was likely to experience consistent difficulties as job instructions become increasingly complex, and that her affective instability was likely to episodically attenuate her capacity to carry out complex job instructions. (*Id.*) She was likely to have consistent difficulty adaptively managing normative work pressures. (*Id.*)

      2.      **Jannat Wolfe, LSW**

On June 18, 2013, Plaintiff saw Jannat Wolfe, LSW for consultation. At that time, she was "grieving deeply due to her husband's death." Ms. Wolfe assessed depression. (R. at 401-02.)

On August 16, 2013, Plaintiff attended a follow-up session of counseling with Ms. Wolfe, in which Plaintiff was concerned because she was not doing things that she normally enjoyed doing—gardening, needlepoint, and walking her dogs. In a mental status examination, Ms. Wolfe found Plaintiff's affect was appropriate, her attitude was cooperative, her insight and judgment were intact, her recent memory was impaired, her mood was anxious, her thought content was logical and coherent, and her thought process was intact. Ms. Wolfe determined that Plaintiff was experiencing depressive symptoms but no suicidal thoughts. Ms. Wolfe and Plaintiff agreed that Plaintiff would return for a follow-up in two weeks and consult with Dr. Walter. (R. at 399-400.)

3.  **State Agency Review**

In October 2012, after review of Plaintiff's medical records, Bruce Goldsmith, Psy.D., a state agency psychologist, assessed Plaintiff's mental condition. (R. at 124-30.) Dr. Goldsmith opined that Plaintiff was mildly restricted in her activities of daily living; moderately limited in maintaining social functioning; mildly limited in maintaining concentration, persistence, or pace; with no episodes of decompensation of an extended duration. (R. at 129.) He further determined that the evidence did not establish the presence of the "C" criteria. (*Id.*) Dr. Goldsmith gave great weight to Dr. Sarver's assessment, finding it consistent with clinical and activities-of-daily-living information in the file. (R. at 130.)

### IV. THE ADMINISTRATIVE DECISION

On March 21, 2014, the ALJ issued her decision. (R. at 67-78.) Plaintiff met the insured status requirements through June 30, 2015. (R. at 70.) The ALJ next found that Plaintiff met the non-disability requirements for disabled widow's benefits set forth in Section 202(e) of the

Social Security Act and that the prescribed period ends on November 30, 2019. (*Id.*) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 11, 2011, the alleged onset date. (*Id.*) The ALJ found that Plaintiff had the severe impairments of obesity, fibromyalgia, and depression with anxiety. (*Id.*) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). This means that the claimant is able to lift up to 20 pounds occasionally; lift or carry up to 10 pounds frequently; stand or walk for approximately 6 hours per 8 hour workday, and sit for approximately 6 hours per 8 hour workday with normal breaks. She can never climb ladders, ropes or scaffolds; no more than occasionally climb stairs or ramps; and occasionally balance, stoop, crouch, crawl, and kneel. The claimant should be provided a sit/stand option

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claiman''s residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

11

> allowing her to sit 1-2 minutes after standing for one hour. She must avoid concentrated exposure to work hazards such as unprotected heights and dangerous moving machinery. She can use lower extremities no more than occasionally to push/pull and operate foot controls and use upper extremities no more than occasionally to push/pull. She can reach overhead no more than occasionally with upper extremities and use upper extremities no more than frequently to handle, finger and feel. The work must consist of no public contact and no more than occasional contact with coworkers and supervisors.

(R. at 71-72.) In reaching this determination, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (R. at 73.) The ALJ and assigned "some weight" to the opinions of the state-agency medical consultants "but not controlling weight" as they are not treating sources and did not have the opportunity to review the entire record. (R. at 75.) The ALJ also assigned "some weight" to the opinion of Dr. Walter, noting that she is a treating source but her "limitations find no support in the record," and there were no functional or physical limitations to such extent documented in her treatment records. (*Id.*) The ALJ did not evaluate or assign weight to Dr. Sarver's opinion.

Relying on the VE's testimony, the ALJ concluded that even though Plaintiff is unable to perform her past relevant work, she can perform jobs that exist in significant numbers in the national economy. (R. at 76-77.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 77.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).[2]

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

---

[2]Plaintiff also applied for widow's benefits. To qualify for disabled widow's or widower's benefits ("WIB"), a claimant must be unmarried, between the ages of fifty and sixty, be the spouse of a wage earner who dies fully insured and be under a disability as defined in the Social Security Act. 42 U.S.C. § 402(e). To establish disability, a claimant for WIB must prove that he or she suffers from a physical or mental impairment of such severity as to prevent the claimant from engaging in his or her previous work and, considering the claimant's age, education, and work experience, any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423.

## VI.  LEGAL ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ improperly assessed Plaintiff's RFC.  Specifically, Plaintiff contends that in her RFC assessment, the ALJ found Plaintiff's statements were not credible.  Particularly problematic, according to Plaintiff, is the ALJ's assertion that the medical record does not support the extent of Plaintiff's limitations given that the primary impairment is fibromyalgia.  Plaintiff also asserts that the ALJ's assessment of treating physician Dr. Walter's opinion is deficient.  Finally, Plaintiff argues that the ALJ failed to properly evaluate Dr. Sarver's consultative opinion.  (ECF Nos. 15 and 24).  The Court agrees that the ALJ did not properly evaluate Plaintiff's fibromyalgia or adequately consider Dr. Sarver's consultive opinion.  Because these errors require reversal and remand, the Court does not address Plaintiff's alternative contention of error regarding the weight the ALJ assigned to her treating physician's opinion.

**A.   Fibromyalgia**

In assessing a claimant's condition and impairments an ALJ has a duty to discuss his or her "findings and conclusions, and the reasons or basis therefor," so that the Court may engage in "effective and meaningful judicial review."  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (internal quotations omitted); *see also Blackburn v. Astrue*, No. 1:09–cv–943, 2011 WL 2940399, at *7 (S.D. Ohio Mar. 2, 2011) ("This court simply cannot uphold [the Commissioner's] decision as supported by substantial evidence based on a silent record.").  Here, the ALJ found that Plaintiff had the severe impairment of fibromyalgia, but failed to discuss the effects of the condition or otherwise discuss the limitations in her RFC that are attributable to it.

14

"Fibromyalgia . . . is a medical condition marked by 'chronic diffuse widespread aching and stiffness of muscles and soft tissues.'" *Rogers*, 486 F.3d at 244 n.3 (quoting *Stedman's Medical Dictionary for the Health Professions and Nursing* at 541 (5th ed. 2005)).  While a diagnosis of fibromyalgia does not necessarily entitle a claimant to a finding of disability, the condition may be severe enough to result in disability. *Compare Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988) (finding disability due to fibromyalgia); *with Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (finding substantial evidence that a claimant's fibromyalgia was not severe enough to result in disability).

The Sixth Circuit has recognized that the evaluation of fibromyalgia presents unique challenges:

> [U]nlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs. *See Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988) (per curiam) (noting that objective tests are of little relevance in determining the existence or severity of fibromyalgia); *see also Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003) (observing that "[f]ibromyalgia is an 'elusive' and 'mysterious' disease" which causes "severe musculoskeletal pain").  Rather, fibromyalgia patients "manifest normal muscle strength and neurological reactions and have a full range of motion." *Preston*, 854 F.2d at 820.  The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.*; *Swain*, 297 F. Supp. 2d at 990.

*Rogers*, 486 F.3d at 243–44.  "Since the presence and severity of fibromyalgia cannot be confirmed by diagnostic testing, the physician's opinion must necessarily depend upon an assessment of the patient's subjective complaints." *Swain*, 297 F. Supp. 2d at 990.  "This places a premium, therefore, in such cases on the assessment of the claimant's credibility." *Id.*

When the record presents evidence of fibromyalgia, the Sixth Circuit has not hesitated to remand or reverse administrative decisions that fail to consider, or apply incorrect standards to,

15

the condition. *See, e.g.*, *Rogers*, 486 F.3d at 244 (remanding in part because the ALJ "impliedly dismiss[ed] or minimaliz[ed]" the claimant's fibromyalgia); *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859 (6th Cir. 2011) (finding an ALJ's failure to identify fibromyalgia as a severe impairment, or explain why it was not one, to be a gaping oversight); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 778 (6th Cir. 2008) ("[T]he ALJ in this case did not discuss, let alone apply, the correct standard for assessing a diagnosis of fibromyalgia in his decision, instead emphasizing and basing his denial of benefits on 'normal' physical findings . . . ."). Likewise, this Court has admonished ALJs for failing to properly address fibromyalgia within their decisions. *See, e.g.*, *Blackburn v. Astrue*, No. 1:09–cv–943, 2011 WL 2940399, at *7 (S.D. Ohio Mar. 2, 2011) ("Given the utter absence of any discussion of Plaintiff's fibromyalgia by the ALJ in her written opinion, I conclude that remand is required.") (Report & Recommendation later adopted); *Boston v. Astrue*, No. 1:10–cv–408, 2011 WL 4914759, at *9 (S.D. Ohio Sept. 15, 2011) ("The ALJ's failure to address this evidence, and properly evaluate Plaintiff's fibromyalgia, prevent the Court from engaging in meaningful review of the ALJ's decision.") (Report & Recommendation later adopted).

Here, the ALJ found that "the medical record does not support the extent of [Plaintiff's] limitations. She complained mostly of right shoulder, knee, thigh, and hip pain but this is not documented in the record to the extent alleged by her." (R. at 75.) The Court cannot discern based on this statement whether the ALJ was faulting Plaintiff for a lack of objective testing to support her claim of fibromyalgia or if the ALJ was referring to other physical impairments altogether. Given that the record is replete with evidence that Plaintiff had been receiving treatment for her fibromyalgia for years, the ALJ's failure to discuss the condition at all deprives

16

the Court of its ability meaningfully to review the decision.  It is unclear to the Court whether the ALJ discredited evidence of fibromyalgia or simply ignored it.  *See Boston*, 2011 WL 4914759 at *9 ("When an ALJ fails to mention relevant evidence in his or her decision, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.") (internal quotations omitted).  Furthermore, the ALJ's failure to address fibromyalgia casts doubt on her analysis with regard to Plaintiff's credibility as well as the weighing of the opinion evidence.  Absent a discussion of Plaintiff's fibromyalgia, the Court cannot provide meaningful review and, therefore, remand is appropriate.  *Germany-Johnson*, 313 F. App'x at 778; *Blackburn*, 2011 WL 2940399 at *7.

**B.     Dr. Sarver's Opinion**

Even assuming that the ALJ properly considered Plaintiff's fibromyalgia, the ALJ failed to consider the opinion of Dr. Sarver properly.  The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(c); *see also* SSR 96–8p 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions.").  The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole,

and the specialization of the source. In addition, the regulations provide that where, as here, the ALJ does not assign controlling weight to the claimant's treating physician, he or she must explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(e)(2)(ii). Where an ALJ's opinion satisfies the goal of § 416.927 and is otherwise supported by substantial evidence, the failure explicitly to provide the weight assigned is harmless. *See, e.g.*, *Pasco v. Comm'r of Soc. Sec.,* 137 F. App'x 828, 839 (6th Cir. 2005) (harmless error where the ALJ failed to mention or weigh the report of consultative neurologist who only evaluated plaintiff once and was not a treating source); *Dykes v. Barnhart*, 112 F. App'x 463, 467–69 (6th Cir. 2004) (failure to discuss or weigh opinion of consultative examiner was harmless error).

Here, in her discussion of the medical records, the ALJ discusses a portion of Dr. Sarver's opinion but fails to mention any of the limitations he assessed for Plaintiff. The ALJ did not otherwise mention or weigh the opinion. The Commissioner does not dispute that the ALJ failed to evaluate Dr. Sarver's opinion. Instead, she maintains that, even if the ALJ failed to weigh Dr. Sarver's opinion, this omission was harmless error. The Commissioner argues that the error was harmless because Dr. Sarver's assessed limitations are not "inherently inconsistent" with the ALJ's assessed RFC. Moreover, she contends that the error was harmless because the ALJ presented a hypothetical question to the vocational expert that was consistent with the limitations assessed by Dr. Sarver, and the vocational expert indicated there were jobs an

individual could do within those assessed limitations. The Court finds neither of these contentions availing.

The record belies the Commissioner's position that Dr. Sarver's assessed limitations are not inconsistent with the ALJ's RFC. In her RFC, the ALJ imposed only two mental health limitations, namely no public contact and no more than occasional contact with coworkers or supervisors. This RFC is indeed inconsistent with limitations imposed by Dr. Sarver. For instance, Dr. Sarver indicated Plaintiff would have difficulty in understanding, remembering, or carrying out simple job instructions. (R. at 376.) The ALJ's assessed RFC, however, includes no limitation on the degree of complexity of work Plaintiff can do and does not include a restriction to only simple or unskilled work. Dr. Sarver indicated Plaintiff would have consistent difficulty managing normal work pressure. (R. at 377.) The ALJ's RFC contains no limitation on the degree of job stress Plaintiff can manage and does not include a restriction to low stress work.

The Commissioner's position that the ALJ posed a hypothetical question to the vocational expert that incorporated the limitations assessed by Dr. Sarver is likewise unavailing. The RFC imposed by the ALJ did not account for a number of limitations Dr. Sarver found as a result of his examination of Plaintiff. The Commissioner is correct that the question to the vocational expert incorporated Dr. Sarver's opinion for one limitation, specifically a restriction to one to three simple, routine, repetitive tasks. The question, however, did not account for Dr. Sarver's opinion that Plaintiff would have difficulty with simple tasks, dealing with normal work pressures, or managing her anger, frustration, and impulses. Thus, the Commissioner's

contention that the hypothetical posed to the vocational expert is consistent with Dr. Sarver's opinion is not supported by the record.

Finally, even if the Court found that the ALJ's decision is supported by substantial evidence,"'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Here, the ALJ erred by failing to evaluate Dr. Sarver's opinion and the error was not harmless. In this case, the Commissioner failed to abide by its own procedures and did not comply with the requirements of 20 C.F.R. § 404.1527(c). "A procedural error is not made harmless simply because [the aggrieved party] appears to have little chance of success on the merits anyway." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) (citations omitted).

### VII.  CONCLUSION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the Court **REVERSES** the Commissioner of Social Security's non-disability finding and **REMANDS** this case to the Commissioner under Sentence Four of § 405(g) for further consideration consistent with this Opinion and Order.

**IT IS SO ORDERED.**

**DATED:  September 28, 2016**

/s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**